FILED
U.S. DISTRICT COURT
DISTRICT OF **IN THE** UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2002 JUL -8 P 6: 45

LINDA WISE                                       *

CLERK'S OFFICE
AT BALT. **Plaintiff**                           *

BY _____ DEPUTY
vs.                                              *      CIVIL ACTION NO. MJG-00-3660

BALTIMORE COUNTY PUBLIC                          *
SCHOOLS
                                                 *
          Defendant                              *

*      *      *      *      *      *      *      *      *

MEMORANDUM AND ORDER

The Court has before it Defendant's Motion for Summary

Judgment and the materials submitted by the parties related

thereto.  The Court finds a hearing unnecessary to resolve the

motion.

I.    BACKGROUND[1]

Plaintiff Linda Wise ("Plaintiff" or "Wise") was hired to be

a custodial worker for Defendant Baltimore County Public Schools

("Defendant") in July of 1999.  She was assigned to Old Court

Middle School ("Old Court"), and her immediate supervisor was

Emory Lee ("Lee").  Wise contends that beginning in mid-August of

1999, she was subjected to sexual harassment during the course of

---

[1]    In the present context, the facts must be taken in the
light most favorable to Plaintiff.



her employment when Lee made sexually suggestive comments to Wise
and invited her to have sexual relations with him.  Wise rejected
Lee's sexual advances, whereupon Lee attempted to coerce her
acquiescence by promising favorable job evaluations and continued
employment.

Wise contends that although she continued to reject Lee's
sexual advances, Lee continued to make the advances.  In
addition, Wise contends that Lee engaged in a course of
retaliation against her for rejecting his advances, which
included:

- giving her poor work evaluations;

- attempting to cause discord between Wise
  and her co-workers;

- refusing to accommodate Wise's doctor's
  orders for light duty after Wise injured
  her back on the job;

- refusing to provide Wise with adequate
  cleaning supplies necessary to perform
  her duties; and

- unreasonably increasing Wise's work
  duties.

As a result of this treatment, Wise contends that she began to
experience severe emotional distress and feared for her job
security.

In October of 1999, Wise reported Lee's previous and
continuing course of sexual harassment to the special education

2

teacher at Old Court as well as Ms. Dora Cash ("Cash"), Old
Court's site representative.  Cash met with Wise to discuss the
problem in November of 1999, and she informed Wise that she would
discuss the matter with Lee.  At this time, and again at some
later unspecified time, Wise made a written request to be
transferred to another school.  Cash informed Wise that she would
try to find an opening for Wise at another school.

    After meeting with Lee, Cash again met with Wise and
informed her that Lee expressed dissatisfaction with Wise's work
performance.  Cash did not tell Wise whether Cash and Lee had
discussed Wise's allegations of harassment.  Sometime shortly
after this second meeting with cash, Wise complained to Old
Court's Assistant Principal, Mr. Talarango ("Talarango"), that
Lee was attempting to cause conflict between Wise and one of her
co-workers, Pernithia Gady ("Gady").  Wise told Talarango that
she believed Lee was doing this because Wise had rejected his
sexual advances.  Talarango suggested that Wise report the
behavior to the Principal or to Cash.  Wise had already reported
the behavior to Cash, but she expressed to Talarango that she was
afraid to report it to the Principal.

    On an unspecified date in January of 2000, Lee called Wise
at home three times to tell her that she should report to work at
Old Court despite the fact that the school was closed that day

3

due to snow. Wise eventually reported to work and was later reprimanded by Lee for failing to clean a room in the art department, the door to which was locked and had a "Do Not Enter" sign on it. As a result of this confrontation, Wise contends that she experienced heart palpitations, chest pain, and dizziness and was taken to the hospital by ambulance. When Wise returned to work after this incident, Lee told her that she would not be getting out of any work because of her illness and that he planned to have her fired. A few days later, Lee showed Wise a poor work evaluation he had completed regarding her performance. He then told her that he would give her a good evaluation if she would keep her mouth shut.

On or about January 21, 2000, Wise contacted her employee union, AFSCME Local 434, to report Lee's sexual harassment. Wise contends that on February 22, 2000, she filed a formal grievance (presumably with the union) and was informed that an investigation would be conducted. When Wise returned to work after filing the February 22, 2000 grievance, Lee confronted her about the complaint. Lee then said, in front of Wise and co-worker Gady, that Wise had said that she wanted to have oral sex with one of the male custodians.

On March 6, 2000, Wise was told, in a meeting with Equal Employment Opportunity Commission ("EEOC") and union

4

representatives, that, as requested, she was being transferred to another school. On March 8, 2000, Lee told Wise that her new assignment would be at Milford Mill High School ("Milford Mill"). Wise contends that when he told her this, Lee grinned in her face and said: "I want you to know this. You think you did something. I'm going to have a part in that evaluation. I want you to know I will have a part in that evaluation." Wise Dep. 191. After this conversation with Lee, Wise called Johnny Jackson ("Jackson"), her EEOC representative, to express her concern about Lee's remarks. Jackson told Wise to report to Milford Mill and assured her that Lee would not have a say in her evaluation. See id. at 193. He also informed her that, regardless, she would not lose her job based on what Lee said. See id.

In early March of 2000, Wise reported to Milford Mill, where she was supervised by Chris Barber ("Barber"). Barber told Wise that he was not sure what had happened at Old Court, but that Lee and Cash were very close and that Wise should "watch her back". See Wise Dep. 197. Wise continued working at Milford Mill for approximately one month. During her shift on April 5, 2000, Wise was called to a meeting with Barber and Cash. Cash handed to Barber a very poor evaluation of Wise completed by Lee, which Barber proceeded to sign in the presence of Cash and Wise. Wise

contends that Cash then handed it to Wise and informed her that she was being terminated. Cash gave Wise the option of working for the next two weeks or receiving two weeks' pay without working. When Wise stated that she was not going to work the two weeks, Barber escorted Wise to the door and collected her keys.

The next day, Wise received a phone call from Mr. Wingerd ("Wingerd"), the Manager of Operations. Wingerd informed Wise that Cash had made a mistake -- i.e. that Wise was not being terminated. Wingerd stated that Wise was to continue working but at a location other than Milford Mills to be determined shortly. Wise was then contacted by Steve Sherman, the Foreman of Building Operations, and told that she was to report to work at Bedford Elementary School ("Bedford"). Wise reported to Bedford the next day, having missed only one day of work as a result of the "termination" meeting with Cash and Barber. See Wise Dep. 213.

On May 8, 2000, Wise filed a charge of discrimination with the EEOC alleging sexual harassment and retaliation. The EEOC issued a Right to Sue Letter on October 8, 2000. Wise filed the instant suit on December 18, 2000, alleging a cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1996), as well as unspecified violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

6

## II.  LEGAL STANDARD

In deciding a summary judgment motion, the Court must look beyond the pleadings and determine whether there is a genuine need for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-53 (1986).  If the Defendant carries its burden by showing an absence of evidence to support a claim, the Plaintiff must demonstrate that there is a genuine issue of material fact for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986).

An issue of fact must be both genuine and material in order to forestall summary judgment.  An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the Plaintiff.  See Anderson, 477 U.S. at 248.  An issue of fact is material only if the establishment of that fact might affect the outcome of the lawsuit under governing substantive law.  See id.  A mere scintilla of evidence in support of an essential element will not forestall summary judgment.  See id. at 251.

III. <u>DISCUSSION</u>

    A.    <u>Title VII Claims</u>

        Plaintiff Wise contends that she suffered sex discrimination in violation of Title VII when Lee created a hostile work environment by sexually harassing Wise; when Lee continued to harass Wise in retaliation for her rejecting and complaining about his sexual advances; and, finally, when Lee's harassment and Wise's complaints thereof culminated in her employment being terminated. Each claim shall be considered in turn.

        At the outset the following distinction must be noted. Wise characterizes much of Lee's harassing behavior as "retaliatory" on the ground that he was retaliating against her because she rejected his advances. However, for the purposes of evaluating her Title VII retaliation claim, the only actions that could possibly be legally "retaliatory" would be those taken by Lee after Wise engaged in the protected activity of complaining about Lee's conduct. <u>See</u> <u>Van Gunten v. Md. Dep't of Env't</u>, 243 F.3d 858, 863 (4th Cir. 2001). The pre-complaint harassing behavior Wise refers to as "retaliatory" -- i.e. committed in <u>retaliation</u> for her rejecting Lee's advances but before she formally complained[2] about his behavior -- will be considered as part of

_____

      [2]    An informal complaint of discrimination is a protected activity if the accused person knew about the complaint. <u>See</u> <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 273 (4th Cir. 2001) (citing

her hostile work environment claim but do not provide a basis for a retaliation claim under Title VII.


### 1.    Hostile Work Environment

Title VII makes it unlawful for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of employment because of such individual's sex.   42 U.S.C. § 2000e-2.  Sexual harassment in the course of employment is actionable under this Title VII prohibition.  See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986).  An employer is subject to liability for the allegedly sexually harassing actions of a supervisor with immediate authority over the employee.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764-65 (1998).

However, "[n]ot all sexual harassment that is directed at an individual because of his or her sex is actionable."  Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4ᵗʰ Cir. 1996).

---

Armstrong v. Index Journal Co., 647 F.2d 441, 488 (4th Cir. 1981)). Thus, Wise's October, 1999 complaints about Lee's behavior to Cash and the special education teacher could constitute protected activity for the purposes of a retaliation claim if Lee knew about them.  However, because there is no evidence that Lee learned of Wise's complaints until after she filed a formal grievance in February of 2000, Lee's post-February 2000 behavior is the only behavior that can serve as the basis of Wise's retaliation claim.

Actionable sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature if the conduct creates an intimidating, hostile or offensive working environment or unreasonably interferes with the individual's work performance.  See Meritor, 477 U.S. 57, 65.

To establish a prima facie case against Defendant on her hostile work environment claim, Wise must produce evidence from which a reasonable jury could find that Lee's harassment was:  1) unwelcome; 2) based on sex; 3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and 4) that some basis for imputing liability to Defendant exists.  See Spicer v. Va. Dep't of Corr., 66 F.3d 705, 709-10 (4th Cir. 1995).

The severity and pervasiveness of the harassment are to be evaluated by considering the totality of the circumstances giving rise to the claim.  See Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993).  The factors to consider, none of which is by itself determinative, include:  1) the frequency of the discriminatory conduct;  2) its severity;  3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether it unreasonably interferes with an employee's work performance.  See Spriggs v. Diamond Auto Glass, 242 F.3d 179,

184 (citing <u>Harris</u>, 510 U.S. 17, 23). According to the Supreme

Court:

> This standard, which we reaffirm today, takes
> a middle path between making actionable any
> conduct that is merely offensive and
> requiring the conduct to cause a tangible
> psychological injury. As we pointed out in
> <u>Meritor</u>, "mere utterance of an . . . epithet
> which engenders offensive feelings in an
> employee," does not sufficiently affect the
> conditions of employment to implicate Title
> VII. Conduct that is not severe or pervasive
> enough to create an objectively hostile or
> abusive work environment -- an environment
> that a reasonable person would find hostile
> or abusive -- is beyond Title VII's purview.

<u>Harris</u>, 510 U.S. at 21 (internal citations omitted). Thus, Wise

must establish under the totality of the circumstances both that

she subjectively perceived her work environment as abusive and

that the environment was objectively abusive.

Wise relies upon certain occurrences, which allegedly took

place between August of 1999 and February of 2000 (when she

formally complained about Lee's behavior), to establish that

Lee's sexually harassing behavior amounted to a hostile work

environment. The only evidence Wise presents in support of her

allegations consists of her own deposition testimony and her own

affidavit asserting:

> • In mid-August of 1999, and on four or
>   five subsequent occasions, Lee asked
>   Wise and other female employees to go
>   out for drinks with him. <u>See</u> Wise Dep.

11

104, 266.

- On an unspecified date in late August of 1999, Lee led Wise to the boiler room at Old Court and, once there, told her he wanted to have sex with her.  Wise said "no", and she left the room without incident.  See id. at 101-109.

- On an unspecified date in September of 1999, Lee told Wise that she would have to have sex with him if she wanted to get good evaluations and keep her job. See Wise Aff. ¶ 2.

- The next day, Lee asked Wise if she wanted to get a hotel room with him, to which she replied "no."  See Wise Dep. 111-112.

- Around this same time, Wise contends that Lee refused to provide Wise with some of her cleaning supplies and increased her work responsibilities. See id. at 113-116.

- After Wise injured her back on the job, Lee refused to assign light-duty work to Wise.  See id. at 80-83, 142.

- Lee tried to cause a fight between Wise and her co-worker, Pernithia Gady, by telling Gady that Wise had written graffiti on the walls in Gady's work area.  See id. at 94-97.

- In October of 1999, Lee walked into the women's locker room while Wise was changing her clothes.  See id. at 351-52.

- At an after work hours holiday gathering on December 23, 1999, Lee put his arm around Wise and the other female workers and said to Wise, "Why do you give me

such a hard way to go?".  Then he told
all the women that their behinds were
too big.  See id. at 276-8.

- As detailed above, Lee instructed Wise
  to come to work one day in January of
  2000 when school was closed due to snow.
  See id. at 301. Once at work, Wise and
  Lee had an altercation over cleaning the
  art room.  See id. at 263.

- When Wise returned to work after
  experiencing chest pain and dizziness as
  a result of this altercation, Lee
  demanded a doctor's note and said Wise
  did not look sick to him.  He also told
  her she was not going to get out of any
  work and he was going to get rid of her.
  See Wise Aff. ¶¶ 5-6.

- A few days after the January snow day
  incident, Lee gave Wise a poor work
  evaluation and said he would give her a
  better one if she could "keep her mouth
  shut".  See id. ¶ 7.

- Lee constantly criticized Wise's job
  performance.  See Pl.'s Opp'n 24.

- Lee generally "stared and lured" at
  Wise.  See Wise Dep. 277.

There is no evidence that Wise welcomed any of this conduct,
and the Court does not doubt that these acts upset Wise to a
degree that she subjectively perceived her work environment to be
abusive.  However, many of the alleged incidents do not appear to
be based on Wise's sex, which is the second required element of a
hostile work environment claim.  See Spicer, 66 F.3d 705, 709-10.
While sex-based harassment need not involve sexual conduct, there

13

must be some evidence that the non-sexual sex-harassment was because of the victim's gender. See Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 79-81 (1998). "When someone sexually harasses an individual of the opposite gender, a presumption arises that the harassment is 'because of' the victim's gender." Hopkins, 77 F.3d 745, 752 (emphasis added). Yet there is no presumption that a male supervisor's harassing conduct which is non-sexual in nature is engaged in because of a female employee's gender.

Of the above-detailed incidents, only six appear to have been based on Wise's gender. Wise does not produce evidence sufficient to establish that the following alleged incidents were based on her sex: Lee asking Wise and other co-workers to go out for drinks; Lee's failure to adequately provide Wise with cleaning supplies; Lee's attempt to cause conflict between Wise and Gady; Lee telling Wise to come to work on a snow day; Lee's criticizing Wise's performance, orally and in writing; and the various altercations between Lee and Wise about Wise's work duties.

The allegation that Lee unreasonably increased Wise's responsibilities because she rejected his sexual advances is conclusory and unsubstantiated. Wise offers her deposition testimony that she and Lee had a misunderstanding with respect to

14

an art room Lee wanted Wise to clean but does not explain how
this amounted to an unreasonable increase in her cleaning
responsibilities.  Wise Dep. 113-116.  Wise also contends that on
one occasion, she had to mop the entire gymnasium floor, which
she normally only had to "spot-mop".  Id. at 76.  Again, Wise
fails to offer any explanation as to how this activity, which
does not appear to be an unreasonable duty to assign to a school
custodian, amounts an unreasonable increase in Wise's duties.
Wise does not explain what amount of responsibility would
typically be given to a similarly situated custodian who was not
subjected to Lee's sexual advances.  Nor does she present
evidence to establish that her workload "unreasonably increased"
compared to her responsibilities before she began rejecting Lee's
sexual advances.  Thus, Wise fails to offer evidence sufficient
to prove either that Lee unreasonably increased her
responsibilities or that he did so because of Wise's gender.
Wise's "naked opinion" that she was the victim of sex
discrimination in this regard does not, without more, establish
that such discrimination occurred.  See Malina v. Baltimore Gas &
Elec. Co., 18 F.Supp.2d 596, 603 (D.Md. 1998).

      The remaining six incidents that do appear to be based on
Wise's sex and her general allegation that Lee "stared and lured
at her" do not establish, under the totality of the

circumstances, that Lee's statements and conduct were so severe or pervasive that a reasonable person would deem them to be objectively hostile or abusive. Nor do they appear to have altered the conditions of Wise's employment.

To evaluate whether a hostile work environment claim can be established, the Court must consider the frequency of the sexually harassing incidents. With regard to Lee's "staring and luring" at Wise, there is no evidence as to the frequency, nature, or even what Wise means by this. The other six alleged incidents took place over a span of approximately six months. When the Court considers the frequency of approximately one incident per month in conjunction with the next elements of a hostile work environment claim -- the severity of the conduct and whether it was physically threatening -- it does not appear that the conduct was frequent and severe enough to be a defining condition of Wise's workplace.

Generally, a hostile environment claim that does not involve particularly severe conduct will require a showing of multiple instances, especially where the conduct primarily involves only utterances of offensive epithets. See Harris, 510 U.S. 17, 21. For example, in EEOC v. R&R Ventures, 244 F.3d 334, 339-40 (4th Cir. 2001), the Fourth Circuit found that a supervisor's sexually harassing conduct which was not particularly severe but occurred

16

on a virtual daily basis was sufficiently frequent to state a prima facie hostile work environment claim. On the other hand, moderately severe but infrequent sexual harassment is not actionable. For example, Judge Nickerson of this Court found that plaintiff failed to establish a prima facie case where, over the course of approximately one year, her supervisor: subjected her to various offensive touchings, including putting his hand under her dress and placing it on her thigh; made sexual innuendos at plaintiff's expense; and kissed, hugged, and otherwise offensively touched other female employees in plaintiff's presence. See Raley v. Bd. of St. Mary's County Comm'rs, 752 F.Supp. 1272, 1274-75 (D.Md. 1990). As stated in Raley, such "isolated incidents" were not sufficiently severe and pervasive to constitute an actionable hostile work environment. See id. at 1280.

The number (six over a six-month time period) and nature of the incidents alleged in the instant action are less severe and pervasive than those presented in Raley. Id. In addition to their relative infrequency, none of the alleged incidents were physically threatening. In fact, aside from the holiday gathering incident, where Lee put his arm around Wise and other female workers, there is no evidence of any physical contact. Wise testified that Lee never spoke vulgar words to her. Wise

17

Dep. 272.  Finally, Wise does not offer evidence establishing
that Lee's behavior unreasonably interfered with her work
performance.  As the Seventh Circuit has stated, "[t]he
infrequency of the offensive comments is relevant to an
assessment of their impact.  A handful of comments spread over
months is unlikely to have so great an emotional impact as a
concentrated or incessant barrage."  <u>Baskerville v. Culligan
Intern Co.</u>, 50 F.3d 428, 431 (7th Cir. 1995).  The Court cannot
conclude that the six incidents in six months alleged in the
instant action were severe, pervasive, or had an impact on Wise
such that they unreasonably interfered with her work performance.

     "Title VII does not attempt to purge the workplace of
vulgarity" and it was "not designed to create a federal remedy
for all offensive language and conduct in the workplace."
<u>Hopkins</u>, 77 F.3d 745, 753-54.  On balance, it seems that most of
Lee's conduct consisted of merely offensive utterances and vulgar
or inappropriate behavior.  While some of Lee's actions, sex-
based or otherwise, may well have been inappropriate, mean-
spirited, and subjectively offensive to Wise, she has not
produced evidence sufficient to demonstrate an objectively
hostile work environment.  Wise therefore has not presented
evidence sufficient to establish a hostile work environment
claim.

## 2.    Adverse Employment Actions

Even where sexual harassment is not sufficiently severe or pervasive to amount to an actionable hostile work environment, an employee may have a Title VII claim if the harassment culminates in a tangible employment action.  See Burlington, 524 U.S. 742, 761.  A tangible employment action is defined as:

> a significant change in employment status,
> such as hiring, firing, failing to promote,
> reassignment with significantly different
> responsibilities, or a decision causing a
> significant change in benefits.

Id.  Tangible employment actions are actionable "if, but only if, th[e] act or harassment results in an adverse effect on the 'terms, conditions, or benefits' of employment."  Von Gunten, 243 F.3d 858, 866.

Wise contends that Lee's sexually harassing behavior culminated in her employment being terminated and in her receiving poor evaluations.[3]

### a)    Termination

Termination is a tangible employment action that obviously has an adverse effect on the terms and conditions of employment.

---

[3]     Although Wise contends that she is not relying on the poor evaluations to support her adverse employment action claim, the Court will briefly address the matter below.

19

See Burlington, 524 U.S. 742, 761.  However, Wise fails to produce evidence sufficient to establish that her position was, in fact, terminated.  As discussed above, within a day of the April 5, 2000 "termination" meeting between Wise, Cash, and Barber, Wingerd called Wise to tell her that Cash had made a mistake when informing Wise that she was being terminated and that he wanted her back at work right away.  See Wise Dep. 210. The poor evaluation form that Cash handed Wise at the meeting stated that the "evaluation team (i.e. Cash, Barber, and Lee) recommended that [Wise] be terminated from employment from Baltimore County Public Schools."  Def.'s Ex. 7 at 2 (emphasis added).  According to the Senior Operations Supervisor for the Central Area for Baltimore County Public Schools, David Gilotty, Cash did not have authority to terminate Wise.  Gilotty Aff. ¶ 6. Rather, Cash only had the authority to recommend Wise's termination to her superior, Mr. Wingerd.  See id.

After missing one day of work, Wise returned to work but at a different location -- i.e. Bedford Elementary School.  See Wise Dep. 212.  Regarding how the transfer affected the terms, conditions, and benefits of her employment, Wise testified as follows.

> Q:   Is [Bedford] closer to your home?
>
> A:   Yes.

Q:  It sort of met your demand in the grievance to be moved closer to your home, didn't it?

A:  Yes.

* * *

Q:  Ms. [Wise], how many days of work did you actually miss from the day you got fired or you thought you got fired to the day that you reported to Bedford. Did you miss any work?

A:  It may have been just one day.

Q:  Just one day?

A:  Yes.

Q:  Did Mr. Sherman or Mr. Wingerd assure you that you were still employed?

A:  Yes.

Q:  And that you would not be treated as a new employee, but simply as an employee who had always been there from the time you very first started with the Board of Ed., correct?

A:  Yes.

Q:  Your benefits didn't get cut off, right?

A:  No. Nothing changed.

Wise Dep. 212-213.

Despite Wise's subjective perception that she was terminated, it appears from the evidence that she was not terminated and, instead, that she was transferred to a more

favorable job location. In any event, Wise has failed to produce evidence sufficient to establish that she suffered an employment action that adversely effected the terms, conditions, or benefits of her employment.

### b) Poor Evaluations

A district court within the Fourth Circuit has noted that "'not everything that makes an employee unhappy is an actionable adverse action'". Settle v. Baltimore County, 34 F.Supp.2d 969, 989 (D.Md. 1999), aff'd, 203 F.3d 820 (4th Cir. 2000) (quoting Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997)). Indeed, to be actionable, the action must constitute a significant change in employment status or benefits. See Burlington, 524 U.S. 742, 761.

Unfavorable evaluations constitute an adverse employment action only when used as a basis to detrimentally alter the terms or conditions of employment. See Van Gunten, 243 F.3d 858, 867-68 (citing Spears v. Mo. Dep't of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000)). Assuming without deciding that Lee's poor evaluations of Wise were based on her rejection of his sexual advances, the evidence fails to establish that Wise's poor evaluations were used to alter the conditions of her employment for the worse.

22

Wise specifically identifies only two poor evaluations of her work performance by Lee: the evaluation he gave her after the art room altercation on the snow-day in January, 2000, in connection with which he said he would give Wise a better evaluation if she could "keep her mouth shut"; and the evaluation Cash handed to Wise at the April 5, 2000 meeting. See Pl.'s Opp'n 8-9, 11. Wise does not allege that the conditions of her employment were detrimentally altered after the January, 2000 evaluation. Wise's own deposition testimony quoted above establishes that after receiving the April 5, 2000 evaluation, she was transferred, as requested, to a job location closer to her home and her employment terms, conditions, and benefits were not otherwise altered in any way. Wise Dep. 212. Thus, Lee's poor work evaluations of Wise cannot be construed as culminating in an action which adversely changed Wise's employment terms, conditions, or benefits. Wise therefore fails to produce evidence sufficient to establish that Lee's sexual harassment culminated in any actionable adverse employment action.

### 3.   Retaliation

Under Title VII, it is illegal for an employer to discriminate against an employee because the employee protests about or files charges against the employer for alleged

discriminatory conduct.  42 U.S.C. § 2000e-3(a).  To establish an unlawful retaliation claim, a plaintiff must prove that:

> 1)  she engaged in a protected activity;
>
> 2)  the employer took an adverse employment action against her; and
>
> 3)  a causal connection existed between the protected activity and the adverse action.

Van Gunten, 243 F.3d 858, 863 (citing Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997)).

"Protected activity" in the context of a retaliatory discrimination claim includes the claimant's exercise of her First Amendment right to speak out against alleged discrimination -- i.e. to voice a grievance.  See Beardlsey v. Webb, 30 F.3d 524, 530 (4th Cir. 1994).  Thus, a plaintiff cannot include as part of a retaliation claim harassing conduct which pre-dates the voicing of the grievance.  Merely declining sexual advances is not a protected activity.  See Del Castillo v. Pathmark Stores, Inc., 941 F.Supp 437, 438-39 (S.D.N.Y. 1996).  Therefore, the alleged "retaliatory" acts Wise suffered after she turned down Lee's advances but before she complained about his conduct and before he knew of her complaints[4] may not be considered as part

---

[4]    As noted above, the grievance relevant to Wise's retaliation claim is the February, 2000 formal grievance (and not Wise's October, 1999 informal complaints to Cash and the special education teacher), as the evidence establishes that Lee first

of her retaliatory harassment claim.  Moreover, to be actionable,
the post-grievance retaliatory harassment Wise experienced must
have been severe enough to adversely affect the terms, conditions
or benefits of her employment.  See Munday v. Waste Mgmt. of N.
Am., Inc., 126 F.3d 239, 243 (4th Cir. 1997).

    Excluding all of the pre-grievance conduct which, as noted
above, could not have been in retaliation for Wise's complaint,
Wise alleges two ways in which the terms and conditions of her
employment were adversely affected by Lee after she complained
about his sexually harassing conduct.  She claims that Lee
continued to cause her to experience a hostile work environment;
and that her position was terminated.


### a)    Continued Hostile Work Environment

    Wise alleges three post-grievance incidents.  First, in late
February of 2000, Lee said in front of Wise and co-worker Gady
that Wise had said that she wanted to have oral sex with one of
the male custodians, Frankie Bates.  See Wise Dep. 282.  Second,
upon finding out that Wise was going to be transferred to another
school, Lee told Wise that although she "thought she had done
something", he would still have a say in her evaluations.  Id. at

_____

learned of Wise's complaints after the February, 2000 grievance.

191.  Finally, Wise alleges that Lee completed the poor work evaluation Wise received on April 5, 2000 because Wise rejected his advances.  For the reasons set forth above, these three isolated incidents over a three-month period of time fail to establish sufficiently severe or pervasive conduct which altered the terms and conditions of Wise's employment.


### b)    Termination

Wise contends that she was wrongfully terminated in retaliation for filing a grievance about Lee's sexually harassing behavior.  As discussed above, the evidence establishes that Wise was not terminated.

In sum, Wise has failed to produce evidence sufficient to establish that she suffered an actionable hostile work environment or that Lee's sexual harassment culminated in an actionable adverse employment action.  Nor has she produced evidence sufficient to establish that she was retaliated against for complaining about Lee's alleged sexual harassment. Accordingly, Defendant is entitled to summary judgment on Wise's Title VII claims.

B.    **§ 1983 Claim**

42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory, or the District of Columbia,
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

There is no free-standing claim under § 1983.  Rather,

§ 1983 permits a suit to vindicate rights, privileges or

immunities provided by virtue of the Constitution, a statute or

other means.  See West v. Atkins, 487 U.S. 42, 48 (1988).

Because Wise's Title VII claims fail and she has asserted the

violation of no Constitutional or other federal right, her claim

under § 1983 lacks any basis.  See Causey v. Balog, 162 F.3d 795,

804 (4th Cir. 1998).


C.    **§ 1985 Claim**

Wise makes no allegations and cites no evidence opposing

Defendant's Motion for Summary Judgment on her § 1985 conspiracy

claim.  The facts alleged in reference to Wise's other claims do

not support an allegation of conspiracy.  Moreover, in the

absence of any substantive violation of rights, there would be no

basis for a conspiracy claim in any event.  Thus, Defendant is
entitled to summary judgment on Wise's § 1985 claim.


IV.    CONCLUSION

       For the foregoing reasons:

            1.    Defendant's Motion for Summary Judgment is
                  GRANTED.

            2.    Judgment shall be entered by separate Order.

       SO ORDERED this ____8th____ day of July, 2002.


                                    Marvin J. Garbis
                               United States District Judge